GRAY v. GRAY *et al., Appellants.*

1. **Fraud.** An agreement, obtained from a woman by fraud, to accept a different provision in lieu of the alimony decreed in her favor by the court does not bar her right to such alimony.

2. **Estoppel.** Conduct of one induced by the fraud of another cannot be pleaded by the latter as an estoppel.

*Appeal from Jasper Circuit Court.*—Hon. M. J. McGregor, Judge.

Reversed.

*Phelps & Brown* with *Wm. M. LaForce* for appellants.

The finding and judgment of the trial court are wholly unsupported by the evidence. Mrs. Gray never consented to the provision of the deed. Nor is there any estoppel in the case against her—an estoppel *in pais* must be specially pleaded. *Guinn v. Simes*, 61 Mo. 339. An equitable estoppel occurs when a party to an action has by his act or declaration induced the other party to do some act so as to change his position which otherwise would not have been done. 6 Wait's Actions and Defences, 681; *Heath v. Bk.*, 44 N. H. 174; *Chandler v. White*, 84 Ill. 435; *Noble v. Blount*, 77 Mo. 235; *Piper v. Gilmore*, 49 Me. 149. A party will not be estopped from setting up a claim to property by acquiescing in the acts of another with regard to it unless he is acquainted with his rights. *Buckingham v. Smith*, 10 Ohio 288; *Boggs v. Mining Co.*, 14 Cal. 279.

*E. J. Montague* for respondent.

HENRY, J.—In the year 1876 the defendant, Martha M. Gray, obtained a divorce from the plaintiff in the common pleas court of Jasper county with an allowance

Gray v. Gray.

of one thousand dollars as alimony in gross, and plaintiff alleges that on the 2nd day of October thereafter he executed and delivered to his brother, John W. Gray, a deed conveying a tract of land in Dade county in trust for said Martha and her and his children.   The trusts declared were as follows :

*First,* The trustee, after paying the costs and repairs and taxes on said lands to receive one-half of the balance of the net proceeds of the rent of said farm annually, which shall be applied to the support, maintenance and education of the said parties of the third part—the children.  Except that it shall not be used for the education of the said Martha M. Gray, which said money arising from the rent of said lands, or the rents in kind shall be delivered to the said Martha M. Gray.

*Second,* Whenever the whole of said lands can be sold for the sum of twenty-four hundred dollars, or when the same can be sold to the satisfaction of the said parties of the first and second part, then the proceeds of such sale of said lands shall be divided equally between the party of the first and second part, and the party of the second part shall execute bond to the said Hester, Ida, Lucy and Fannie, in at least double the amount of one-half the price of said land, to be approved by the court or judge exercising probate jurisdiction in the county where said children may then reside, which money shall be by said party of the second part, or his successor in trust, loaned out on good security at the best rate of interest that can be obtained, and the interest shall be applied as is required that the rents should be applied until the youngest child shall arrive at eighteen years of age.   Then said money in the hands of the trustee shall be divided equally amongst said children, and in case of the death of either of said children, leaving heirs, then the share which should have gone to such child shall go to such grandchild or children, and in case all said children shall die without issue living, then said money shall be paid to the party of the first part.

That Martha M. Gray accepted said deed of trust and agreed to enter upon the record satisfaction of said award of alimony, but that disregarding her said agreement she had caused an execution to be issued on said judgment for alimony directed to the defendant, Whiteside, sheriff of Dade county, who has levied the same upon said real estate and advertised it for sale on the 4th of April, 1882, and praying that he be restrained and enjoined from proceeding under said execution. The answer was a general denial and on a hearing of the cause the preliminary injunction was made perpetual and the defendants have appealed.

The plaintiff's brother, Jno. W. Gray, testified that Martha M. Gray agreed to accept in lieu of her alimony a deed conveying to him as trustee for the children the land in controversy and she to receive one-half of the rents of the farm until it was sold for their maintenance and a deed of trust was to be drawn up to that effect. He testified that W. H. Phelps, her attorney, was present. That afterwards the deed read in evidence was executed by plaintiff. Does not know that she ever saw it. It was not delivered to her but was sent to Dade county for record. She afterwards for several years received one-half the rent of the farm.

Plaintiff testified that in 1879 he got the deed from the recorder's office of Dade county and took it to Carthage and delivered it to Mrs. Gray, and this, so far as he knew, was the first time she ever saw the deed. That Phelps, her attorney, was present when she agreed to accept the provision made for her in the deed. That Mr. Buller, Phelps' law partner, went with plaintiff to the recorder's office in Dade county and Buller delivered the deed to that officer for record. He further testified that the deed was not read to Mrs. Gray on the day of its execution. It appears, also, from the evidence that prior to the execution of this deed an execution had been issued for said alimony and placed in the hands of the sheriff of Dade county who was ordered by Phelps and

Buller in October, 1876, to hold up the execution, stating in the order that "the case had been settled by compromise."

Buller testified that he did not recollect why he directed the sheriff to hold up the execution.

Mrs. Gray testified that on or about the 1st of May, 1876, she signed a quit-claim deed to Miles Gray relinquishing her dower right in consideration of a deed made by him to her for an undivided half of said land. These deeds were never delivered. That on the occasion when plaintiff and John Gray came to her house she said to plaintiff if he would convey to her an undivided half of the farm and timber land advertised for sale for her alimony she would stop the sale. They agreed to do it. They then went out and brought Phelps to her house and Phelps then told them he would not settle unless the deed was made to her and that he was too busy to attend to the business that day. They all went away and afterwards plaintiff and John W. Gray returned to her house and stated that they had got Nathan Bray to draw up the papers. They dined with her and at dinner they said she should have one-half the rents of the farm until sold and then one-half the purchase money. And John Gray said to plaintiff, "we were to read the paper to her" but plaintiff said, "it would be all right". Three years after plaintiff came to her house and told her she had no interest in the farm and should never have a dollar of the money when he sold it. He went out and returned in a few minutes and read a paper to her to show she had no interest in the land and said it was the paper he and John Gray had got up to set aside the execution. He left the paper with her. She further testified that at that time she was without means to prosecute a suit and her health was bad. That she had for seven years supported herself and four girls by keeping a boarding house. When she commenced supporting her family the youngest child was not one year old and the oldest was under seven. That plaintiff had not in all that time

given the family exceeding $250.    That she continued to receive the rents after learning the contents of the deed three years subsequent to its execution because plaintiff and John Gray told her that the rents were all she would ever get.

Phelps testified that plaintiff brought the deed of trust to him at the court house and stated that the matter was settled and on the strength of his statement he directed the sheriff of Dade not to proceed with the sale.

A. B. Farmer testified to a conversation he had with Miles B. Gray concerning the controversy between him and Mrs. Gray and that he stated in that conversation that, "he had got the matter fixed in such a way that he had got her beat."

It is impossible for one to read the evidence in this cause and acquit the plaintiff of having perpetrated a fraud upon Mrs. Gray.    Jno. Gray testified that her agreement was that she would "accept in lieu of alimony a deed conveying the land to me as trustee for the children and she to receive the one-half rents of the farm until it was sold for their maintenance."    Instead of such a deed they procured Mr. Bray to prepare one which secured one-half of the proceeds of the sale of the land to plaintiff in the event of a sale for which provision was made.    This deed they did not read to her but in hot haste carried it to Dade county for record giving neither her nor her attorney opportunity to examine it.    When at the dinner table Jno. Gray suggested that it be read to to her, the plaintiff interfered to and did prevent it. Neither of these brothers present at the trial was called to contradict a word of her testimony.    For three years she received annually the pittance of fifty dollars, sometimes 'less, of the rents, supposing that plaintiff had carried out his agreement with her, and knew no better until 1879, when plaintiff exulted over the success of his scheme declaring to her she had no interest in the land. After she learned the contents of the deed actually made she continued to receive one-half the rent of the land

until 1882 and this, plaintiff claims, estops her from repudiating the pitiful provision made for her and her children in that deed. The reason she assigned for continuing to receive the rent was that plaintiff and John Gray told her when plaintiff gave her the deed in 1879 that it was all she could ever get. Throughout the entire transaction she reposed a misplaced confidence in plaintiff and John Gray. That they perpetrated a fraud upon her is beyond question and now the plaintiff relies to estop her from unearthing that fraud upon acts and conduct on her part superinduced by that very fraud

Says Mr. Bigelow in his work on Estoppel: "An estoppel by matter *in pais* may be defined as an express or implied admission become indisputable by reason of the circumstance that the party claiming the benefit of it has, while acting in good faith and in accordance with the real or presumed assent of the other party, been induced by it to change his position." Page 387. "If the representation has been procured by *fraud* there will be no estoppel upon the party making it, it would seem, though he made it with the full intention that it should be acted upon." Ib. 491. Mrs. Gray continued to receive the rent because plaintiff told her it was all could ever get. Besides the appellant has not altered his situation on the faith of her receipt of said rent from 1879 to 1882 and she was entitled to all and more than she received from that source. The gross alimony was $1000, and a reasonable rate of interest on that sum would have yielded more than she received from the rent of the land. There are none of the elements of estoppel in the case. The most that can be said for plaintiff is that the testimony in relation to her conduct after she became aware of the character of the deed tended to prove her acceptance of the provision in the deed for her benefit in lieu of dower. The plaintiff will be just where he was when the decree for alimony was made if the deed be set aside or the sale under the execution proceed. By this suit he seeks to compel Mrs. Gray to accept and abide by the provision made for her

and her children in the deed, because she did not promptly assert her rights on discovering his fraud. She suffered more than he by that delay.

The facts disclosed in this record entitle him to no such relief as he asks and the judgment will be reversed and the cause remanded. It is to the interest of both parties that the defendants' answer be amended alleging the fraud and asking that the deed be set aside, otherwise the land may be sold at a sacrifice under the execution and Mrs. Gray realize but little from the sale, and the defendant lose his land and still be. liable for the balance of the alimony. All concur.