THE GERMAN SAVINGS INSTITUTION *et al.* v. JACOBY
*et al., Appellants.*

1. **Contract:** FRAUDULENT REPRESENTATIONS: ESTOPPEL. Where a party is induced to enter into an agreement through the representations of one acting as the agent of all the parties thereto, he will be estopped from repudiating it after the interests of the other parties have become fixed under it, unless the representations inducing it were fraudulent.

2. ——— : ——— : ———. The evidence in this case examined and held that the charge of fraudulent representations inducing the exchange of certain notes for bonds was not sustained.

3. **Practice:** ILLEGAL ISSUE OF BONDS. The defense that certain bonds of a corporation were issued in violation of the provisions of sec. 8 of art. 12 of the constitution and of sections 727, 728, Revised Statutes of 1879, must be pleaded to be of any avail, and that, too, by setting out facts showing that they were issued contrary to law.

4. ——— : EXCEPTIONS. Where the action of the trial court in refusing an offer to amend a pleading, and in excluding evidence, is not complained of in the motion for new trial, it will not be reviewed in the appellate court.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*Louis Gottschalk* and *Noble & Orrick* for appellants.

(1) The representations made to induce the promise of Samuel Jacoby and on which he relied were material, were false and were so known to be when made, by the officer making them. (2) The correspondence between Bain, president, and Jacoby shows the representations by Bain that were false, and that Jacoby relied upon these representations, as he also asserts in his testimony. (3) Fraud vitiates all contracts and entitles the injured

party to rescind, in a reasonable time after finding out the fraud, by notifying the other party and returning or offering to return whatever of value he has gotten under the contract, placing him in *statu quo.* He need not go into a court of equity to have the contract cancelled. *Grimes v. Kimball,* 3 Allen, 518 ; *Gray v. Gray,* 83 Mo. 106 ; *Hedden v. Griffin,* 136 Mass. 229. (4) There is no estoppel against Samuel Jacoby's claim because Bain showed his letters to any one of the plaintiffs, or because of Bain's oral statement, or because of any acts of Jacoby. If the action of a party was not induced by the representations, no estoppel arises in his favor. *Stanley v. Valentine,* 79 Ill. 544 ; *Gray v. Gray,* 83 Mo. 106 ; *Monks v. Belden,* 80 Mo. 639 ; *Grimes v. Kimball,* 3 Allen, 518 ; *Patterson v. Lytle,* 11 Penn. St. 53. No one has a right to act upon representations contained in a private correspondence with another and not intended for any but him to whom they were addressed. *Kiney v. Whiton,* 44 Conn. 262 ; *Rawlings v. Bean,* 80 Mo. 614 ; *Durant v. Pratt,* 55 Vt. 270 ; *Forsyth v. Day,* 46 Maine, 176 ; *Bank v. Todd,* 47 Conn. 190 ; *Meyenborg v. Haynes,* 50 N. Y. 675 ; *Lindsey v. Lindsey,* 34 Miss. 432. If there is no intention, real or presumed, that the representations be acted upon there can be no estoppel. *Burk v. Adams,* 80 Mo. 504. It is only where there is agency, or the representations are intended to influence third parties, or are of a public nature, that third parties can rely and act upon them. *Rawlings v. Bean,* 80 Mo. 614 ; *Kuhn v. Weil,* 73 Mo. 213 ; *Watson v. Crandall,* 78 Mo. 583 ; *Waterman v. Johnson,* 49 Mo. 410 ; *Mitchell v. Reed,* 9 Cal. 204. No one can be estopped from relief against a fraud practiced upon him. *Gray v. Gray,* 83 Mo. 106 ; *Railroad v. Schuyler,* 34 N. Y. 30. Estoppel must be mutual and will not extend beyond the parties to the transaction. *Griffin v. Richardson,* 11 Ired. 439 ; *Massure v. Noble,* 11 Ill. 531 ; *Wright v. Hazen,* 24 Vermont, 143 ; *Heane v. Rogers,* 9

Barn. & C. 577. To bind defendant it must be shown .that he was under some express duty toward plaintiffs. *Swan v. Ins. Co.*, 2 H. & C. 175, 182 ; *Bank v. Trustees*, 5 H. L. 389 ; *Nicolls Case*, 3 D. & J. 387 ; *Vandeleur v. Blagrave*, 6 Beav. 565. (5) The one hundred thousand dollar bond and mortgage were illegal and void, and any promise based upon them, as a consideration, was not binding and cannot be enforced. The bonds were issued in violation of the constitution of Missouri and the statute law of the state. Const. Mo. art. 12, sec. 8.

*F. N. Judson* and *G. A. Finkelnburg* for respondents.

(1) The evidence shows that the agreement between the Atlantic Milling Company and Samuel Jacoby to exchange the old mortgage notes for new mortgage bonds of equal amount, was complete long before the Atlantic Milling Company became insolvent, and the evidence further shows that the attempted rescission after that event was an afterthought on the part of Samuel Jacoby prompted by a desire to gain a priority over other crediors. (2) Independent of the complete and binding agreement between the immediate parties to the exchange, defendant Samuel Jacoby by his conduct estopped himself from reversing his apparent position by re-asserting a priority as against these plaintiffs who took the new bonds upon the faith of his conduct in the premises and who relied upon his promised surrender of the old securities. Herman on Estoppel, sec. 342 ; Herman on Estoppel and Res. Jud. sec. 811 ; Broom's Leg. Max. 293 ; *Mitchell v. Reed*, 9 Cal. 204 ; *Waterman v. Johnson*, 49 Mo. 410 ; *Kuhn v. Weil*, 73 Mo. 213 ; *Raley v. Williams*, 73 Mo. 310 ; *Pickard v. Sears*, 6 A. & E. 469. (3) A party may be estopped by his own conduct, although there was no original intention to deceive anybody. *Raley v. Williams*, 73 Mo. 310 ; Bigelow on Estoppel, 473 *et seq.;* 2 Pom. Eq., par. 811. (4) General representations as to what will happen in the future, promises

as to what a person will or expects to do, or what he expects to be able to do, or sanguine representations as to a person's expected success, none of these, though never realized, constitute fraudulent misrepresentations within the meaning of the law, unless coupled with an intent to cheat at the time they were made. The misrepresentation must be as to an existing fact. *Miller v. Howell*, 1 Scammon, 499; *Gallagher v. Brunell*, 6 Cowan, 346; *Pike v. Fay*, 101 Mass. 134; *Mooney v. Miller*, 102 Mass. 217; *Sawyer v. Puchett*, 19 Wallace, 146; *Langdon v. Green*, 49 Mo. 363; *Hedges v. Torry*, 28 Mo. 99. (5) It devolved upon defendant to prove the alleged fraudulent misrepresentations, on which he claimed the right to rescind his agreement to exchange. The record shows not merely that he failed to make this proof, but that his allegations were all positively disproved. (6) The attempted defense as to alleged invalidity of the $100,000 mortgage was not pleaded, and the evidence offered was properly ruled out. The evidence offered on this point, even if admissible under the pleadings, did not tend even to prove the invalidity of the bonds.

BLACK, J.—The Atlantic Milling Company is a corporation doing business in St. Louis. George Bain is, and for years has been its president. The mill was destroyed by fire in 1881. In order to rebuild, the company made a deed of trust on the mill premises, dated the sixteenth of January, 1882, to secure notes to the amount of thirty thousand dollars, each note being for one thousand dollars, due in one year. The defendant, Samuel Jacoby, who was, and for many years had been the New York factor of Bain and his mill, took ten of these notes, and some of the plaintiffs and other St. Louis parties took the other twenty. The new mill was constructed on an enlarged scale, and at a cost of nearly one hundred and fifty thousand dollars. For the purpose of raising more money, and to retire the notes

secured by the first or thirty thousand dollar deed of trust the company made a second deed of trust on the same and some additional property, including the new mill, to secure bonds to the amount of one hundred thousand dollars. This deed of trust bears date the eleventh of December, 1882. The bonds are of the denomination of one thousand dollars due in twenty years after date, with interest coupons attached.

The plaintiffs in this case are owners and holders of these twenty-year bonds, and by this suit they seek to enjoin the defendant from selling the mill property under the first deed of trust on the ground that defendant exchanged his ten notes for twenty-year bonds, and that the first deed of trust was satisfied by a surrender of all of the notes thereby secured. The defendant admits that he made an agreement to surrender the notes and take other security, including ten of the twenty-year bonds, but says the notes were never actually surrendered and that he was induced to make the agreement by the false and fraudulent representations of Bain. The charges are, that Bain fraudulently represented that the mill property, included in the one hundred thousand dollar deed of trust to secure the bonds, was of a value in excess of the bonds ; that the property was free and clear of all incumbrances ; that the notes secured by the first deed of trust had been taken up and paid ; and that the Atlantic Milling Company was solvent.

The proof of the alleged fraudulent representations and of the agreement to surrender the ten notes for other security consists, for the most part, in correspondence between Bain and the defendant. On the twenty-seventh of November, 1882, Bain wrote the defendant saying that he had made the bonds payable to Samuel Jacoby or bearer and that they would have twenty years to run ; and in respect of the value of the property in the deed of trust, he says: "We have signatures from the milling machinery men, architects, real

estate appraisers, and the deeds will cover over two hundred thousand dollars worth of property." In another letter of the fourteenth of January, 1883, he says: "I can assure you that everything is right, and if you will agree to take twenty of the bonds, both Jones and myself will give you personal pledges, if you wish them, to retire two or more of your bonds yearly. We must get that mortgage for which you hold ten of the notes (we have ten arranged for and Mr. Allen will arrange the other ten) cancelled, so the property will be encumbered only with the one hundred bonds, and if you won't help us, we must simply get some of our other friends to do it."

Jacoby agreed to take ten of these bonds in lieu of his ten notes, and it is clear that he understood then that the first deed of trust was to be cancelled, and in the letter giving his consent to the arrangement he says: "Of course it is understood that the ten bonds are to be taken by me, provided all the others can be placed on equal terms." Bain then sent ten of the bonds to defendant and in a letter requested a return of 'the ten notes, saying: "I want to cancel the thirty thousand dollar mortgage and have paid all the other notes but your ten. I have to leave here next Monday for Cleveland."

Upon the receipt of the last letter, the defendant wrote to Bain, January 25th, and after speaking of the impracticability of the twenty-year bonds, and that he had been hasty in proposing to take ten of them, he says: "I do not know whether this bond agreement can be changed or not; if it can I would certainly be in favor of it. I wish you would come here from Cleveland, as I would like to see you and talk matters over fully." Bain went to New York and had the requested interview, which resulted in an agreement that defendant would surrender the ten notes and take therefor five demand notes of the Milling Company of two thousand

dollars each, endorsed by Bain and Jones, and secured by ten of these twenty-year bonds. These five notes were duly executed, endorsed and sent to defendant with a request that he return the ten notes "so that I can take the old mortgage off;" and on the twenty-fourth of February, 1883, defendant acknowledged the receipt of the five two thousand dollar notes and says: "The ten notes are in the safe deposit box and being too late to take them out this afternoon will send them about next Monday or Tuesday."

Bain made other requests for the ten notes, and defendant answered by saying that he had mislaid the keys to the safe deposit box, but that he would have the box opened at an early day and forward the notes. On the sixteenth of April, 1883, the defendant wrote to Bain, and, after speaking of the news just received of the suspension of the Atlantic Milling Company, he says: "Under the circumstances I don't feel as though I ought to part with the security I now hold, before I know the exact state of affairs, as to existing assets and the extent of the liabilities," etc.

Before considering the question as to the alleged false representations, it is proper to dispose of some questions made by the plaintiffs. They insist that defendant ought to be held to be estopped from enforcing the thirty thousand dollar deed of trust. It will be seen that as early as January, 1883, the defendant agreed to exchange his ten notes for bonds, and it is clear that he knew that an important step in the entire transaction was the release of the first deed of trust. The evidence shows that some of these plaintiffs exchanged their notes, secured by the first deed of trust, for bonds, and that other plaintiffs purchased bonds. These transactions on the part of the plaintiffs were made on the statements of Bain that defendant had agreed to exchange his ten notes for bonds. It is equally clear that the plaintiffs relied upon these statements of Bain, that defendant was also a party to the

exchange of securities, and that the prior or thirty thousand dollar deed of trust would be satisfied. The defendant takes the position that there can be no estoppel, as between him and the plaintiffs, because they had no right to act upon the private correspondence between him and Bain.

If this correspondence had been carried on between the defendant and Bain for the ear of the latter only, then it might be said that third persons could not found an estoppel on it. *Rawlings v. Bean*, 80 Mo. 614; *Mayenborg v. Haynes*, 50 N. Y. 675. But that is not this case. The exchange of the old for the new securities involved the consent and action of all of the holders of the old notes, and this the defendant knew. He knew, too, that purchasers of the new bonds would rely upon a satisfaction of the first deed of trust. All this is disclosed by the correspondence between Bain and defendant. Indeed, Bain was made the agent of both the defendant and the plaintiffs for the purpose of communicating the progress of the negotiations. The plaintiffs had an interest in the subject-matter of these negotiations, and hence they had a right to rely upon the agreement between Bain and the defendant. 2 Pom. Eq. Jur., sec. 811.

From January to April of the year 1883, there was an agreement on the part of the defendant to surrender his ten notes, and this agreement was perfected by the twenty-fourth of January, 1883, so that thereafter defendant held the ten notes as bailee for Bain, or what is the same thing, for the Atlantic Milling Company. In the meantime the rights of these plaintiffs became fixed. Unless, therefore, the defendant was induced to make the agreement by fraudulent representations of Bain, he must be held to be estopped from enforcing the thirty thousand dollar deed of trust. The doctrine has been approved by this court that if a representation has been procured by fraud, there will be no estoppel

upon the party making it; though he made it with the intent that it should be acted upon. *Gray v. Gray*, 83 Mo. 106; Bigelow on Estoppel, (2 Ed.) 450. While this result leads us back to the question whether defendant was induced to make the agreement by fraud practiced upon him by Bain, still, in the consideration of that question, we cannot overlook the fact that defendant made the transaction with Bain knowing that the rights of other persons depended upon his actions. Under these circumstances, the defendant was bound to act with all reasonable prudence.

The charge that Bain fraudulently represented the property in the deed of trust to secure the bonds to be of a value in excess of one hundred thousand dollars is based mainly on the letter of the twenty-seventh of November, 1882. In that letter he does say that the deeds will cover over two hundred thousand dollars worth of property; but in the same connection he speaks of signatures from mill men, architects and real estate appraisers, and it is evidently their certificate of value to which he alludes. That they did value the property at two hundred thousand dollars is not denied, and the proof shows that the cost of the mill and the value of the land footed up to that amount. The subsequent depreciation in the value of this and all property of a like character cannot affect the question. We do not see that there was any misrepresentation in this respect.

In the letter of the fourteenth of January, Bain says: "We must get that mortgage for which you hold ten bonds cancelled, so that the property will be encumbered only with the one hundred bonds." The further proof shows that there were two other deeds of trust on the property, one in favor of the insurance company for forty-five thousand dollars, which had been reduced by payment to twenty-four hundred dollars,

VOL. 97—40

and one for ten thousand dollars on a part of one lot. Both of these deeds of trust were recorded before the date of the execution of the thirty thousand dollar deed of trust, which the defendant seeks to enforce. At the time of the suspension, which was in April, 1883, there were mechanics' liens against the new mill to the amount of twenty thousand seven hundred dollars. Some of these mechanics' liens related back to November, 1882, but they were n ot filed until after the suspension. There were also some taxes due on the property and a claim of forty-four hundred dollars for insurance which was subsequently declared to be a lien.

In respect to this charge, namely, that the property was free of all incumbrances, it is to be observed that Bain, in his letter, is speaking of the two deeds of trust, the one for thirty thousand dollars and the other one made to secure the one hundred thousand dollars of bonds. The other two deeds of trust were incumbrances on the property when defendant took the ten notes, and it seems more than probable that he knew of these liens. The defendant knew the mill w as under process of construction, and must have known that liens would accrue for unpaid claims for work and materials. We find no specific allusion in the correspondence to any liens save the thirty thousand dollar deed of trust and the new one to secure the bonds. The only reasonable interpretation of the letter is that Bain had his mind on and spoke only of the thirty thousand dollar deed of trust when he said, " so the property will be incumbered only with the one hundred bonds."

Bain did represent in these letters that the twenty notes other than the ten held by defendant, all secured by the thirty thousand dollar deed of trust, had been provided for. That those notes were to be exchanged for bonds clearly appears. The proof is that nineteen were in fact surrendered and exchanged for bonds. Fath, who held the other note, had agreed with Bain to

exchange it for a bond, and would have done so but for the fact that the note was mislaid and not found until long after the suspension, and the other bondholders then took up that note.

But there is still a broader and more comprehensive view to be taken of all the alleged fraudulent representations, and that is this : Defendant had been doing business for and in correspondence with Bain for a period of twenty years, and during that time had made frequent trips to St. Louis. The interview between them at New York seems to have been free and frank. Bain says he told Jacoby all about his business, and that he thought he could get out all right. Defendant says he then allowed Bain to draw for five thousand dollars on thirty, sixty or ninety days ; that Bain drew a little stronger on consignments than other customers ; that Bain wanted all the money he could get. Defendant knew Bain was rebuilding the mill on an enlarged scale, and had much flour on hand here and in England. We can but conclude that the defendant had a full knowledge of the affairs of the milling company, and when the correspondence is read in the light of these facts it does not disclose any fraudulent representations. The agreement to exchange securities sprang from a willingness to aid Bain in his enterprises, and not from any fraudulent representation.

Towards the close of the trial, defendant called Bain as a witness, who stated that all of the shareholders in the Atlantic Milling Company gave their consent in writing to the issue of the one hundred thousand dollars of bonds, and defendant then proposed to show that no meeting of the shareholders was called for that purpose and that the bonds were issued without such meeting having been called ; but the court excluded the evidence. The theory of the proposed defense is that the bonds are void because issued in violation of sec. 8, art. 12, of the constitution, and of R. S., secs. 727, 728. A

defense founded on these laws must be pleaded to be of any avail, and that, too, by setting out facts showing that the bonds were issued contrary to law. This was not done, and for this reason the evidence was properly excluded. It is true the defendant then offered to amend, which request was refused, but it is by no means clear that any exception was taken to this ruling, though exceptions were saved to the exclusion of the evidence. None of these rulings of the court, however, were made matter of complaint in the motion for new trial, and are therefore not before us for review. We are by no means satisfied that the proposed evidence makes out a case of the issue of bonds prohibited by the constitution and statute, but for the reason before stated we express no further opinion upon the question.

The judgment in this case is therefore affirmed. BARCLAY, J., not sitting; SHERWOOD, J., absent; the other judges concur.